We claim that there are multiple omissions by trial counsel that substantially and injuriously affected the sentencing proceedings. I don't know if I can get to all of them, but what I'd like to do is start by highlighting the evidence showing that for counsel's failure to file a notice of appeal, he would have pursued one. And what we know from the record is that they spoke two times after the sentencing hearing. The first time for five minutes in the marshal's office, that interview was cut short. And during that time, both Purviance and counsel admit that he either said, I want an appeal or I'm interested in appealing. Where's the evidence that he said, I wanted the appeal and I instruct my counsel to do so? Is there anything in the record that she admits that he counsel admits that she says, she says two things. She says, he could have said, I want an appeal, or it was what about an appeal? What was the finding of the magistrate judge on that subject? And what makes that? I think the magistrate judge recognized what counsel testified to, which is she wasn't sure. She said, well, he was upset with the sentence. And he said, but about an appeal, but could have said, I want an appeal. So it was really uncertain. I don't. Have you read the findings and recommendations that were adopted by the district court? Because I don't read them as saying I'm kind of uncertain. Well, I'm basing my comments on the record. I have the same problem. I'm basing my comments on the record. Well, you've got findings here that unless you can establish you're clearly erroneous, we're bound to. You don't know what the finding is. Well, the magistrate judge, he mentioned both. He mentioned both of the comments that counsel made in that regard. The second time they spoke, they spoke for eight to ten minutes over the phone the next day. And Mr. Proviance says that he asked her for more consultation time. Not surprisingly, he was one of the most intelligent, one of the most intelligent and demanding clients she had ever represented.  After weighing the evidence carefully, the court concludes that Proviance did not ask Ms. Tatter to file an appeal, nor did he ask anyone else to contact her for him regarding the timely filing of an appeal. I'm not contending. What's the finding? I'm not contending that he asked her to file an appeal. Well, then what are you contending? He said he testified he wanted an appeal, or she testified also he said, what about an appeal? And so I think that – And we have a finding that you don't contest that he did not instruct her to file an appeal. So on what basis – Well, it's unclear. I think the record is unclear, and I think the magistrate judge's report is clearly, if it suggests anything other than the fact that the evidence is unclear, is clearly erroneous. I mean, I don't – I think that the record establishes that – And I would have had a couple different positions. Because you just told me you didn't disagree with the finding that said he did not instruct her to file an appeal, and now you tell me it's unclear, and now you tell me whatever the magistrate found must have been clearly erroneous. What exactly is your position? The records suggest, according to what counsel testified to, that he either said one of two things, I want an appeal, or what about an appeal? I believe that's pretty close to the quote in the transcript. And so we have the finding of fact by the magistrate judge based on that, that presumably it wasn't the first, because he didn't say – the magistrate judge said that there was no instruction to file an appeal. I think what's important here, though, is what – the next day, when they spoke on the phone, Mr. Provine said, you know, I would like to meet with you again. I think he said it on both days, but he said it again, and I refer the court to Excerpt from Record, Volume 2, 163. Counsel says – she admits that he asked her for more time to consult, because he didn't get enough time. The first interview is cut short, the phone interview, and she says on page 163, I think it's unlikely I'm going to get down to see him at the jail. And so he obviously asked her that he wanted more time to consult, and she says that after that phone call, she was unsure whether he wanted it or didn't want it, and I suggested to this court that there was a failure of consultation there. If after 15 minutes is not sufficient time to discuss whether someone would want to pursue an appeal, and if she told him she couldn't get down to see him, he obviously asked her to come down. Let me ask you the question in a little different way, or a different question. The magistrate judge, as I read it, appeared to put a good deal of weight on the testimony that they discussed, the lawyer and client discussed, had a discussion about the advisability of taking an appeal, and that the lawyer was expressing the view that it wasn't a very good thing to take an appeal. And I can understand that, because if he took an appeal, he might lose the benefit of what it was a good deal. Why do you think it would have been a good idea for him to take an appeal? Because that would also undercut, I suppose, the finding of the magistrate judge that he didn't clearly say that. Well, I don't think that really is very critical in terms of whether he had the right to pursue. He had a constitutional right to an appeal. No, I'm not asking that question. I'm asking, I'm saying that it would be the magistrate judge's finding that he didn't clearly ask for an appeal, didn't clearly want an appeal after they had a discussion. That's the way I read it. That would be undermined, and it would support your position that he clearly did want an appeal. If there was some indication here that it would have done him some good to take an appeal. And I can't see, I personally can't see that that would make any sense. So that's why I think this is very, it seems to me this is quite rational. Well, I think there was definitely an appeal here. He had non-frivolous grounds with which to appeal. The issue of the application of the undue influence enhancement was an issue of first impression in the Ninth Circuit. The fact that counsel failed to make a record, a sufficient record, in order to test the imposition of the Pleasant-Grath testing, these are things that were really viable appellate issues. He, the counsel said that he was the most demanding, intelligent client, one of them, that she had ever experienced. Her investigator said that in the 20 years she's been dealing with indigent cases, every rational defendant who's ever known has opted for a free appeal. So I think there were many, many compelling reasons if she was uncertain. This is a defendant who would enter into a plea agreement with an appeal waiver. Well, he qualified under the exception to the appeal waiver clause. He had some issues that he could pursue. The point is this is somebody who had already considered the possibility of appeal and at least on one occasion decided it was worth giving up. Well, he wasn't challenging his conviction. He admits his conviction. He was never challenging his conviction. He's challenging the application of the undue influence enhancement. That's it. He never once challenged his conviction. And, of course, you know, the court, there's no record here for this court to review with respect to the imposition of these constitutionally invasive conditions of supervisory release that were imposed. We have absolutely no record of that. I mean, at the very least, that requires a remand. And in COPE, we know that, you know, it's counsel's response to government's burden to show the necessity of imposing those conditions, and it's counsel's burden to produce some medical evidence or other evidence with which the court can actually make a decision. Okay. That's helpful. If you want to save some time for that, we've got a minute. Thank you. Thank you. We'll hear from the governor. From the state. From Harvard. May it please the court. Brandon Ramdell, assistant U.S. attorney. I think this appeal issue is summarized on the page that counsel referred the court to. That is 163 of the excerpt of record. When at the evidentiary hearing, trial counsel was asked, did he indicate to you he wanted to pursue an appeal? Answer by trial counsel, no. He indicated he wanted to talk about it. And we did talk about it. And he wasn't committed. He said he would think about it. And I think he gave me the impression that he was scared about this higher sentence that could happen also. So we know what the standard is here. Either the attorney consulted with her client about the issue of appeal, or she did not. If there's no consultation, then, of course, it was deficient on the part of the lawyer. But we don't have that situation here. Clearly, they talked about it, and it's ineffective, which is the issue in this whole appeal. Only if the attorney fails with express instructions to do so to file an appeal. And that clearly was not the case here. As we know from the record, this defendant was not only intelligent, he was a prolific writer. He was a consistent communicator of what he wanted. He had plenty of opportunity to express to his lawyer, I want an appeal. It didn't happen. It was discussed. It was aired out. He didn't do it. And based on the advice of his lawyer, which we would suggest was good advice. Any further questions on the issue of appeal? And then we have, of course, the other issue of the undue influence claim, which has not been discussed here today. But I would suggest that the facts in this case support the presumption that the court found. It's a rebuttable presumption if there's more than a ten-year age differential between the perpetrator and the victim. And there was here. In this case, there was an evidentiary hearing. This girl, when this defendant started grooming her, dealing with her, was, I believe, 13, certainly at the most 14. The evidence is that he communicated with her daily and extensively. The discussions were sexually explicit. And in the excerpt of record at page 320, there is a statement by her that's in evidence that we think is very telling on the issue of this presumption. And that is when she says to him in an e-mail or communication, Basically, everything that we have done stood against all that I used to believe in. But it doesn't feel wrong. It feels right. It makes me feel really close to you, and it turns me on a lot. You could probably tell that, though. And this is what she communicates to him after his efforts over a long period of time to get her in a position where he could have sex with her. Now, the lawyer in this case, trial lawyer, his lawyer, fought the presumption, clearly. She filed a well-reasoned objection to it. She went after it again, approached it again in her sentencing memorandum, and again in her oral argument at sentencing. The court, the district court, commented on the, quote, very competent representation from his lawyer. The fact that the strategy was not successful, as hoped for, does not render the assistance provided by counsel ineffective. Did the defense counsel submit the 302s that had been reflecting the interviews done by the FBI of either the victim or the victim's friend who was knowledgeable about the relationship? I believe there was one 302 submitted. There was some discussion about a second 302 that was never resolved. And I believe defense counsel later on in the proceedings conceded that she wasn't sure there was a second 302. There was certainly one. We now know that there were two 302s. Isn't that correct? I don't know that. I think I've seen two 302s. All right. Then I stand corrected. And I acknowledge it is a difficult case to make. But, in fact, the 302s leave the flavor that the relationship was a consensual one. The law does not make it an irrebuttable presumption. So my question is, by failing to pursue the 302s and by failing to submit at least both of them, my impression is that neither had been submitted. But I'm a little adrift in the record, too. Did that reflect some deficient performance? Because if you're ever going to succeed in the argument to overcome the undue influence presumption, it's a tough case to make. But it seemed to me what I looked at, the 302s were the strongest ammunition that defense counsel had. Well, she had problems. And the problem that she had was whether or not to call this young woman, this girl, as a witness. The 302, I think she successfully made her case rebutting the presumption orally and in writing. Well, she didn't successfully make the case. Well, she made it. She took a shot. Well, she took a shot at it. But the problem was, much more serious than that, does she call that girl as a witness? And there was a lot of discussion about that. She decided not to do that. Does she call her girlfriend that also had experience with this defendant? There was a lot of discussion about that. And the lawyer made the tactical decision not to pursue calling this young girl who is now three or four years older than she was when all this began. I understand that. I certainly understand the tactical nature of the decision because if you put the girl on the stand, it could blow up in your face. The reason I focus on the 302s and why I describe them as maybe the best ammunition is you know what they say. Now, it might trigger a reaction whereby the prosecutor decides to put the girl up there. But a defense attorney deciding whether or not to call the girl was playing with fire, particularly since she hasn't been able to talk to the girl because the parents have said no, and the attorney, whether good judgment or good taste, either one works for me, decided not to try to pursue the girl around the parents. So she doesn't know what the testimony would be. But she does know what the 302 says because it's there in print. You know exactly what it says. And at least at the time that the girl was interviewed by the FBI, both the girl and her friend appear to still be strong in the notion of, oh, the girl knows exactly what she's doing. She's consensual. Now, whether that's possible in the context of the age difference is obviously an argument that the prosecutor would have made if it went that direction. And what I'm saying is, okay, if I look at this from my perspective, the strongest ammunition the defense attorney has is the 302s. I can't think of a good reason why they wouldn't have been used more, either if they'd been used at all, more forcefully than they were used. And as I say, my sense is that maybe they weren't used or weren't offered up to the court at that time. And so that's why I lay out there, okay, I think the best case the defendant can make on this IAC argument may turn on the 302s. And that's why I focus on that and ask you to speak specifically to the use of the 302s. I can't speak to that, Your Honor, that particular question on the 302s. It was my impression that defense counsel had at least one 302, and there was some discussion about whether or not there was a second 302, and I'm not clear in my mind as to how that was resolved. I confess I'm not either. I do recall seeing something that the information she had, but I'm not sure that she had the statement. But we'll both look at the record and try to sort that out. Any further questions from the court? We're good to be in. Thank you. Thank you. I can clear up the question about the 302s. He's confusing the Brady issue with the 302s that were available at the time of sentencing. Both girls gave statements to the FBI eight months before Mr. Provines was sentenced. So as far as having an agreement of what she would say, I think it's pretty clear what she would say. Both girls said the same thing. So I don't know if you're speaking of what she would say in testimony. I don't know that it's all clear. I think it's absolutely critical that the 302s be presented. It was the only evidence that she had at that time. Your impression is they were not presented as part of the sentencing? I know for a fact they weren't. They were not at all presented. I just want to make a couple of comments in response. If counsel, after the phone call, was unsure whether Provines wanted to pursue an appeal or not, but was sure, as we see from the record, that he had asked for more consultation time, then I think that counsel owed him more consultation time. It was her duty at that point to find out what his wishes were. And she said he called twice a day, but for some reason she didn't receive any of the calls he made from the 7th to the 13th, that window that he had after he was transported from the Anchorage jail to SeaTac. And he claims to have called three or four times. And she claims to have received none of those despite her testimony that he called twice a day and that she didn't think there would be any problem talking to him over the phone, considering the fact that she said she couldn't get down to the Anchorage jail to talk to him. So I think there was a failure of consultation there. Well, again, you've got the magistrate judge's findings. The magistrate judge found that he did not leave a message, and the magistrate judge found corroboration in the fact that he did not communicate to his parents or anyone else who were also able to communicate with the defense attorney. He did not communicate or attempt to communicate through a third party with instructions about filing an appeal. The clearly erroneous standard applies to those findings. But he absolutely said he called her and that she, for some reason, fielded none of those calls. But the magistrate judge found that he did not leave any messages when he called. When he was unable to reach her, he did not seek to leave a message. And the magistrate judge specifically commented upon the efficiency of the federal defender's message system. I want to make one point with respect to counsel's reference to trial counsel's strategic decisions with respect to the application of the undue influence enhancement. There were four cases that I found that were available to counsel before sentencing, four cases. Three of them involved fictitious victims, agents who were posing as minors, and then one of them involved an actual minor. The interesting thing about these cases is that all four of them emphasized the importance of conducting a victim-focused inquiry, which is consistent with the wording of the guidelines. And of note, U.S. v. Mitchell, which is a Seventh Circuit case, went so far as to say conduct an in-depth interpretive analysis and concluded that the undue influence enhancement was focused on the behavior and characteristics of the victim. Now, counsel, with all this precedent, counsel told the court that there was no precedent involving the application of the undue influence enhancement. So the court then mirrors that and says both sides have indicated that there's no precedent, and then the court proceeds to focus on the defendant's conduct rather than the victim's. We've let you go way over time. Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, O'scannlain, Clifton